818 So.2d 589 (2002)
James ARTHUR, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-2863.
District Court of Appeal of Florida, Fifth District.
April 26, 2002.
Rehearing Denied June 21, 2002.
*590 James B. Gibson, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Lamya A. Henry, Assistant Attorney General, Daytona Beach, for Appellee.

EN BANC
HARRIS, J.
We elect to consider this case en banc. Here, Arthur was charged with violating sections 322.34 and 322.264, Florida Statutes, because he was caught driving a vehicle after being notified that he had been designated an "habitual traffic offender" according to the records maintained by the Department of Highway Safety and Motor Vehicles (Department) resulting in his driving privileges being revoked. Section 322.34(5), Florida Statutes makes it a third-degree felony for one whose driver's license has been revoked as an habitual offender to drive a motor vehicle upon the highways of this state. Thus, the elements of the offense are (1) that while defendant's license was revoked as an "habitual offender" (2) he drove a motor vehicle upon the highways of this state.
*591 Section 322.264, Florida Statutes, defines "habitual traffic offender" as "any person whose record, as maintained by the Department of Highway Safety and Motor Vehicles, shows that such person has accumulated the specified number of convictions for offenses described in subsection (1) or subsection (2), within a five year period." (Emphasis added). Section 322.27(5), Florida Statutes, mandates that the Department revoke the license of anyone designated an habitual offender. To show that Arthur had been so designated and that his license had been so revoked, the State introduced a certified copy of defendant's entire driving record showing his classification as an habitual traffic offender (as well as his numerous convictions) and the revocation of his driving license. Since the definition of one of the elements, habitual traffic offender, incorporates the Department's records, it is essential that such records, or at least the relevant portions thereof showing such designation and revocation, be proved to the jury. These records are admissible under section 322.201, Florida Statutes.[1]
The charged offense in this case was not that Arthur had committed a set number of previous offenses for which judgments had been entered as in the case of felony DUI which was being considered by the court in State v. Harbaugh, 754 So.2d 691 (Fla.2000). Here, Arthur's charged offense was continuing to drive after being notified that the Department had determined that he was an habitual traffic offender and that his license had been revoked for that reason. If after receiving the notice of revocation Arthur believed his driving record was in error his remedy was to have his record corrected, not to ignore the revocation and continue to drive. Arthur does not contend he was without knowledge of the revocation. Nor did he suggest below that the driving record introduced was not his. Arthur's objections to the introduction of his driving record were (1) hearsay, (2) not the best evidence, and (3) denial of his right of confrontation.[2]
On appeal, Arthur urges that the State failed to allege in the information the specific prior offenses which led to his being designated an habitual traffic offender. But it is the fact that the Department has designated the defendant as an habitual traffic offender based on his driving record and has thereby revoked his license, and not the underlying traffic offenses themselves, which is the element of the offense.[3] Specifically designating the numerous traffic citations or offenses which led to the designation is not required. To state it simply, the law requires that one whose license is revoked because he is an habitual traffic offender must not drive unless or until his revocation *592 is set aside. The State proved that Arthur's was, that he did, and that it wasn't.
Also on appeal, Arthur urges that this court's opinion in Sylvester v. State, 770 So.2d 249 (Fla. 5th DCA 2000), (even though a proper objection was not made below) mandates reversal because we held therein that the Department's records cannot sufficiently tie the prior convictions to Arthur. But again, it is the fact of the designation as an habitual traffic offender and the resulting revocation which are the elements of the current offense and which must be tied to Arthur, not the prior traffic citations or offenses which led to the designation and revocation. There is sufficient proof in this case that the records submitted as evidence showing the designation and the revocation were Arthur's. The records reflect not just his name, not just his address, not just his birthdate, but even his social security number. The only thing lacking was DNA.[4] To the extent that Sylvester conflicts with this opinion, we hereby recede from Sylvester.[5]
AFFIRMED.
*593 COBB, SHARP, W., PETERSON, SAWAYA, PLEUS, PALMER and ORFINGER, R.B., J.J., concur.
THOMPSON, C.J., concurs in part; dissents in part, with opinion with which GRIFFIN, J., concurs.
GRIFFIN, J., concurs in part; dissents in part, with opinion.
THOMPSON, C.J., concurs in part, dissents in part, with opinion.
Although I concur with the conclusion reached concerning Arthur's conviction, I respectfully dissent from the portion of the court's opinion which recedes from Sylvester.
First, it should be highlighted that the crime at issue in this case is different from the crime at issue in Sylvester.[1] In Sylvester, the defendant was charged with felony driving with license suspended (DWLS), pursuant to Section 322.34(2)(c), Florida Statutes. Here, on the other hand, Arthur is charged with driving with license revoked as a "habitual traffic offender," pursuant to Section 322.34(5), Florida Statutes. The elements of the two offenses are different. As the majority points out, the elements of the 322.34(5) offense are: (1) that while defendant's license was revoked as a habitual offender, (2) he drove a motor vehicle upon the highways of this state. On the other hand, the elements of DWLS pursuant to 322.34(2)(c) are: (1) that while defendant's license was suspended, (2) he, knowing of the suspension, drove a motor vehicle upon the highways of this state, and (3) defendant had been convicted of DWLS two or more times before the instant charge. § 322.34(2)(c), Fla. Stat.
The difference in the two offenses is crucial to understanding why the instant case should not be used as a tool to recede from Sylvester. In this case, Arthur's driving record reflects that the Department of Highway Safety and Motor Vehiclesthe creator of the recordhad previously revoked the defendant's license. In Sylvester, on the other hand, the driving record reflects only that on at least two previous occasions the Department had been told that the defendant was convicted of the offense of DWLS by a court of law. Whereas the driving record in this case is being used by the state to prove the Department's actions, the driving record in Sylvester was being used by the state to prove what had been done by the courts prior convictions of the defendant.
All the driving record in Sylvester reflected was that the Department was notified that the defendant was convicted of DWLS on two or more prior occasions, but it did not reflect whether the defendant was actually convicted. For the two crimes to be analogous, the 322.34(2)(c) offense would have to have these elements: (1) that while defendant's license was suspended, (2) he, knowing of the suspension, drove a motor vehicle upon the highways of this state, and (3) the Department records reflect that defendant was convicted of DWLS two or more times before the instant charge.
This difference is important. In Harbaugh v. State, 754 So.2d 691 (Fla.2000), the supreme court noted in dicta that every *594 element of felony DUI, including the element of proof of the prior convictions, must be proven beyond a reasonable doubt. Id. The supreme court has affirmed that in a trial where prior convictions are necessary to meet an element of the charged crime, the prior convictions must be proven beyond a reasonable doubt. In State v. Pelicane, 729 So.2d 534 (Fla. 3d DCA 1999), rev. denied, 740 So.2d 529 (Fla.1999), the Third District Court of Appeal held in a repeat-offender felony DUI case that a computerized driving record is too unreliable to prove prior DUIs to the "beyond a reasonable doubt" standard. In the instant case, the majority has advanced no substantive reason for why a computerized driving record is too unreliable to prove a prior DUI beyond a reasonable doubt but is reliable enough to prove a prior DWLS beyond a reasonable doubt. See also Coyne v. State, 775 So.2d 969 (Fla. 4th DCA 2000).
The court recedes from Sylvester because, the majority submits[2], Sylvester said that the driving record is not sufficiently linked to the defendant, despite the fact that the defendant's name, address, physical description, date of birth and driver's license number are on the driving record (everything but "his DNA"). Sylvester said no such thinglinking the driving record to the defendant is not what matters. What matters is proving beyond a reasonable doubt that the person whose driving record is before the court is actually the person who committed the prior offenses. Again, if linking the driving record is what mattered, then the third element of 322.34(2)(c) would not be that the prior convictions occurred, but rather that the Department's records reflect that two or more prior convictions occurred.
As Sylvester held, it is the prior convictions themselveseach of them, individuallywhich have to be linked to the defendant. The computerized notations of each prior conviction, unlike the driving record itself, do not contain an individualized description of the person who was allegedly convicted on those prior occasions. As the Third District Court of Appeal explained in Pelicane:
The probative value of this evidence [the driving record] lies primarily in proving that prior conviction exists; not in linking the defendant to the conviction. The evidence only tends to link the defendant to the conviction by the fact that the name on the docket sheet matches the defendant's name. This is clearly insufficient.
Pelicane, 729 So.2d at 535.[3]
In short, although a driving record is indisputably admissible[4], nowhere has the majority's opinion shown why a driving *595 record reflecting two or more DWLS convictions is proof that beyond a reasonable doubt the defendant facing the 322.34(2)(c) charge was convicted on two or more prior occasions of DWLS. For these reasons, I dissent from the portion of the opinion which recedes from Sylvester.
GRIFFIN, J., concurs.
GRIFFIN, J., concurring in part; dissenting in part.
I agree with Judge Thompson's concurrence and dissent. I write further to point out that State v. Fields, 809 So.2d 99 (Fla. 2d DCA 2002), supports the holding of Sylvester and the position articulated in Judge Thompson's dissent. In Fields, the court noted that it had previously cited Sylvester in Garcia v. State, 800 So.2d 725 (Fla. 2d DCA 2001), and held in Garcia, "that proof under section 322.34(2) requires certified copies of prior convictions." The Fields court does not recede from that holding. Rather, the court acknowledged that if Sylvester spoke to DWLS under 322.34(5), as the Fourth District Court of Appeal believed, see Rodgers v. State, 804 So.2d 480 (Fla. 4th DCA 2001), then it would align itself with the Fourth District. The statute at issue in Sylvester was not section 322.34(5), but rather section 322.34(2), as the present opinion clarifies.[1] Therefore, the Fields opinion supports, rather than conflicts, with the holding of Sylvester. At this point in time, no appellate court conflicts with Sylvester as properly understood, and one appellate court has agreed with the holding of Sylvester. By virtue of the majority's disavowance of Sylvester, conflict jurisdiction appears to exist for the supreme court to tell us what the correct answer is.
NOTES
[1] Arthur urges that section 322.201 merely removes the necessity for authentication and does not address the hearsay problem. The statute makes the records admissible without authentication "provided the same is otherwise admissible in evidence." These are public records and reports of a public office or agency and are excepted from the hearsay rule under section 90.803(8), Florida Statutes.
[2] The evidence code exempts the driving records from the hearsay exclusion and places certified copies on par with originals. Concerning the right of confrontation, these records reflect a compilation of traffic offenses committed by Arthur, offenses which were not counted toward revocation until after Arthur was given the opportunity to confront the witnesses against him. Further, these records were presented in open court to "confront" Arthur and he was given the opportunity to confront these records by challenging any entry therein.
[3] State v. Fields, 809 So.2d 99 (Fla. 2nd DCA 2002).
[4] The dissent suggests that while the defendant's driving record is sufficiently linked to defendant by its introduction under section 322.201, it does not adequately link the convictions listed therein to defendant. At least, says the dissent, the driving record does not prove that defendant is the one who committed the offenses listed in his driving record. We believe that the convictions appearing in the records maintained by the Department, records obtained from the courts as a part of the Department's business records (records not disputed by defendant when he was notified that his license had been suspended), are sufficiently linked to defendant to constitute prima facie evidence that defendant committed the offenses reflecting his driver's license and shifts the burden of going forward with the evidence to defendant. Unrefuted, the records are sufficient to sustain a conviction. See State v. Kahler, 232 So.2d 166 (Fla.1970).
[5] It is true that Sylvester can be distinguished on the facts. The gravamen of the offense in Sylvester [section 322.34(2)(c)] was that the defendant was thrice convicted of knowingly driving with a suspended license, whereas the gravamen of the offense herein is that Arthur was convicted of driving after his license had been revoked because he was an "habitual traffic offender" [section 322.34(5)]. The conflict appears in the Sylvester analysis which holds not only that Sylvester's driving record, which was properly admitted in evidence, was insufficient to prove the prior convictions beyond a reasonable doubt but also insufficient to link Sylvester to the prior convictions. Sylvester relied on State v. Harbaugh, 754 So.2d 691 (Fla.2000), but this reliance was misplaced. Section 322.201, Fla. Stat., makes the driving records admissible and section 322.34(2), Fla. Stat., if the record reflects that notice was given, creates a rebuttable presumption of knowledge of the suspension. Harbaugh was primarily concerned with whether a bifurcated process would be required in establishing felony DUI if the defendant elected a jury trial. Although the court discussed submitting certified copies of each judgment in order to evidence the prior convictions, it did not discuss the effect of section 322.201, Fla. Stat., which makes the driving records, the business records of the Department of Highway Safety and Motor Vehicles, admissible in evidence. There would be no reason to make these records admissible unless the records constituted some evidence of the truth of their contents. It is these records which reflected the two prior convictions of driving while license suspended which convinced the jury in this bifurcated hearing that Sylvester was guilty as charged. If the content of the defendant's driving record deemed admissible in evidence is probative of the information contained therein, a record the dissent herein admits is adequately connected to defendant, then at least a prima facie case is established. We held in Sylvester that aside from the question of whether the driving record was probative of the fact that the prior convictions occurred, the mere fact that defendant's name appeared on the driving record along with his address, physical description, date of birth and his driver's license number was insufficient to "link" defendant to the offenses. It is this portion of the analysis which conflicts with this opinion.
[1] The court in Rodgers v. State, 804 So.2d 480 (Fla. 4th DCA 2001), misapprehended the nature of the criminal charge in Sylvester. The crime charged in Sylvester was a violation of § 322.34(2)(c), not § 322.34(5). The Rodgers court concluded that it was in conflict with Sylvester because the elements of section 322.34(5) did not include the prior DWLS convictions. It is true that § 322.34(5) does not have, as an element, the prior DWLS convictions, but in the subsection under which Sylvester was charged (§ 322.34(2)(c)), the prior offenses are an element of the offense.
[2] See footnote 3 of the majority's opinion.
[3] Apparently underlying the majority opinion is concern that the state would be unable to link a prior misdemeanor DWLS with a defendant standing trial for 322.34(2)(c) DWLS because fingerprints are not necessarily attached to the judgments of convictions for misdemeanors. Fingerprints are not the only way for the state to prove identification in these circumstances, however. Even if fingerprints were the only method to link the offense to the defendant, then the proper way to resolve this dilemma is for the state to take the fingerprints of those who commit these offenses. It makes no sense to say that a driving record proves prior convictions in order to skirt the problem. If the prior convictions could be proven beyond a reasonable doubt simply by introducing the driving record, then by the court's logic a defendant could be sentenced as a habitual offender based on a driving record that reflected the requisite prior felony convictions, rather than through the introduction of the certified prior convictions.
[4] See Sylvester, 770 So.2d at 250 n. 1; § 322.201, Fla. Stat.
[1] Since the Sylvester opinion spoke of prior convictions as an element of the felony DWLS offense, it would seem obvious that it was section 322.34(2) under discussion there: section 322.34(2) is the DWLS crime that describes prior convictions as an element of the offense. Since felony DWLS under 322.34(5) does not include prior convictions as an element, it would seem just as obvious that the Sylvester opinion must not have been speaking to that type of felony DWLS.